UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENDALEE RYDALCH,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>BONNEVILLE COUNTY and MERI BYBEE,<br><br>　　　Defendants. | Case No. 4:14-cv-00196-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

The Court has before it Defendants Bonneville County and Meri Bybee's Motion for Summary Judgment (Dkt. 20). The Court heard oral argument on the motion on June 1, 2015, and now issues the following decision.

**BACKGROUND**

Plaintiff Kendalee Rydalch was employed by Bonneville County as a juvenile probation officer until she was terminated on February 15, 2013, in part because she received a second citation for driving under the influence. *Pl.'s Statement of Facts*, ¶ 3, Dkt. 24-1.

On Monday, February 11, 2013, Rydalch arrived at work and requested a meeting with two supervisors, Kyla Remsburg and Brian Beck, as well as with Meri Bybee, the Director of Probation Services. *Def.'s Statement of Facts*, ¶ 4, Dkt. 20-2. When the group was assembled, Rydalch informed her supervisors that she had received a DUI over the

**MEMORANDUM DECISION AND ORDER - 1**

weekend. *Id*. That same day, Bybee placed Rydalch on administrative leave and told Rydalch that she was going to investigate whether Rydalch should be terminated. *Id*. at ¶ 7. Bybee and Remsburg were aware that Rydalch had previously received a DUI in 1999 when she worked as a juvenile probation officer for Court and Clinical, a private company that contracted with Bonneville County to provide its juvenile probation services. *Pl.'s Statement of Facts*, ¶ 39, Dkt. 24-1. In 2006, Court and Clinical was transferred to Bonneville County, and nearly all of the Court and Clinical personnel— including Rydalch, Bybee, and Remsburg—were hired by Bonneville County. *Def.'s Statement of Facts*, ¶ 2, Dkt. 20-2. Bybee and Remsburg were also aware that in 2003, while still at Court and Clinical, Rydalch was charged with an open container violation, which was later dismissed. *Pl.'s Statement of Facts*, ¶ 38, Dkt. 24-1.

After placing Rydalch on administrative leave, Bybee began her investigation. Bybee reviewed the police reports associated with the most-recent DUI, examined Rydalch's BAC test results, and spoke with police officers. *Id*. She also reviewed Rydalch's past performance, including complaints received about Rydalch's work. *Id*. Finally, Bybee met with Bonneville County Director of Human Resources Dan Byron, County Attorney Scott Hall, and County Commissioner Roger Christensen. *Id*. at ¶ 10; *Bybee Dep.*, 124:7–22, Dkt. 24-4. Bybee does not recall precisely when this meeting took place, but it was sometime after she had finished her investigation, and prior to Friday, February 15, 2013. *See id*. At this meeting, Bybee presented the results of her investigation to the others, and they discussed Rydalch's past performance. *Id*. at 125:4–

17. It was at this meeting that the decision to terminate Rydalch was made. *Id*. at 126:14–19. Rydalch was not present at the meeting. *Id*. at 126:11–13.

On or about Thursday, February 14, 2013, a supervisor, under Bybee's direction, completed a form entitled "Bonneville County Employee Counseling and Discipline Record" ("Discipline Form") that would be given to Rydalch the following day. *Pl.'s Statement of Facts*, ¶ 15, Dkt. 24-1. The Discipline Form indicates that the action being taken against Rydalch is "[d]ischarge from all responsibilities and employment." The reasons for the action taken are listed as follows: "DUI, inconsistencies in her story, poor work performance, liability concerns, and concerns about her performance expressed by Judge Savage, treatment agencies, and other collateral contacts. Kenda struggles with policy and procedure and keeping her files current." *Pl.'s Ex. B*, Dkt. 24-6. The following statement of facts supporting the decision to terminate was contained within the Discipline Form as well:

> On February 9, 2013, Kenda received a DUI. When Kenda was first questioned by the officer concerning how much she drank, she responded with none. During the field sobriety test, which she failed, she changed her story to one beer. Kenda agreed to submit to submit to a breath test. She provided three breath samples with results of .143, insufficient and .140.
> On Monday, February 11, 2013, Kenda reported the incident to Meri Bybee, Kyla Remsburg, and Brian Beck. She reported that she had received a DUI over the weekend. She stated that she had gone to dinner with a friend around 7:00 p.m. and drank two beers, she then went to her brother's house where she didn't drink after which she went to a local bar and drank one beer.
> The Bonneville County Sheriff[']s Office was contacted for verification of the amount of alcohol that would need to be consumed to blow a .143/.140. They do not believe that Kenda is being truthful in her statements. In their opinion, it would take approximately 7-8 beers to reach that level.

**MEMORANDUM DECISION AND ORDER - 3**

Kenda's last evaluation dated 8/25/2012 was satisfactory, but concerns were noted concerning her performance and brought to her attention. During the current evaluation period, there have been concerns expressed by Judge Savage, treatment providers, and other collateral contacts. Kenda struggles with providing adequate written documentation. Specifically case plans are not always provided within the time allotted, client notes are disconnected and leave the reader with questions, and correspondence is often fragmented and with typing errors. Her new evaluation was due this month at which time the recommendation would have been to deny a merit step increase and placing Kenda on probation for her work performance.

*Id*. at ¶ 23.

On Friday, February 15, 2014, Bybee met with Rydalch, with two other supervisors also present. Bybee testified that the purpose of the Friday meeting was to advise Rydalch that the decision to terminate her had been made and to "ask her if she had anything additional to add." *Id*. at 126:20–24. Rydalch had not had any contact with anyone from Bonneville County between Monday's meeting and Friday's meeting. *Pl.'s Statement of Facts*, ¶ 17, Dkt. 24-1. At the Friday meeting, Bybee read the Discipline Form to Rydalch, which Rydalch refused to sign. *Id*. at ¶ 20.

Rydalch did not know—until the Friday, February 15, 2014 meeting—that there were "concerns expressed by Judge Savage, treatment providers, and other collateral contacts" about her job performance. *Id*. at ¶ 22. At the close of the Friday meeting, Rydalch was instructed to pack up her personal belongings. *Id*. at § 25.

The Bonneville County Employee Handbook ("Employee Handbook"), which Rydalch received a copy of when she began working there, lays out a detailed disciplinary procedure ("Progressive Discipline Policy"). That section provides:

The purpose of this policy is to establish a framework for administering prompt, consistent, and impartial disciplinary or corrective action [which] may include . . . termination of employment.

Regular full-time . . . employees . . . shall be allowed a hearing with the elected official responsible for their department or their designated representative in connection with any proposed action which would result [in] termination of employment.

The responsible elected official or their designated representative shall provide eligible employees with written notice of the date, time and place where the hearing is to be held. The notice shall set forth the reasons for the proposed action including information or documentation which the county considered as a basis for the action.

Employees shall respond within two business days to indicate their intent to attend the hearing or provide a written response for consideration.

Hearings will be informal and generally will not exceed one hour. The employee will be allowed to present oral testimony or written statements from witnesses as well as any other information or documentation they wish to be considered. The employee may be assisted by an attorney or other representative at their own expense. Discussion generally will be limited to issues set out as a basis for the action in the notice.

Employees who feel that they have been . . . discharged for disciplinary reasons without sufficient cause may access the formal grievance procedure.

Ex. A. Dkt. 25-1. The formal grievance procedure is also contained within the Employee Handbook ("Grievance Procedure Policy"). It allows an employee to file a written grievance and ultimately, if desired, appeal to the Personnel Advisory Council, which is required to hold a hearing within thirty days of the filing of the appeal. Within twenty days of the hearing, the Council must issue a written recommendation, and the elected official with jurisdiction over the affected department will review that recommendation and issue a final decision within five working days. *Pl.'s Ex. C*, Dkt. 24-6.

MEMORANDUM DECISION AND ORDER - 5

It is undisputed that Bybee did not consult the Employee Handbook prior to terminating Rydalch. *Id*. at ¶¶ 27–30. It is also undisputed that Bybee never informed Rydalch that under the terms of the Employee Handbook (1) she had a right to a pre-termination hearing pursuant to the Progressive Discipline Policy, or that (2) post-termination, she could have utilized the Grievance Procedure Policy. *Id*. at ¶¶ 27–30.

Rydalch's Amended Complaint (Dkt. 16) states two causes of action against Bonneville County and Meri Bybee, both brought under 42 U.S.C. § 1983: (1) a violation of her right to due process; and (2) gender discrimination. Defendants Bonneville County and Meri Bybee (collectively, "Defendants") filed the Motion for Summary Judgment (Dkt. 20) at issue here, arguing that Rydalch has failed to create a genuine issue of material fact with regard to both claims. For the following reasons, the Court will deny Defendants' motion in full.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).  There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).   Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

Rydalch brings her claims under 42 U.S.C. § 1983, which provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution

and laws" of the United States. *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (quoting 42 U.S.C. § 1983). Section 1983 is not a source of substantive rights, but rather "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citations omitted).

To state a claim under § 1983, a plaintiff must allege a violation of rights either protected by the Constitution or created by federal statute that is proximately caused by the conduct of a "person" acting under the color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

## 1.    Constitutionally Protected Property Interest

Rydalch must first establish that she possessed a property interest deserving of constitutional protection. While state law establishes the parameters of an individual's substantive interest, federal law is what determines if that interest is a protected property right. *Lawson v. Umatilla Cnty.*, 139 F.3d 690, 692 (9th Cir. 1998). For continued employment to constitute a protected property interest, a person must have a reasonable expectation or a "legitimate claim of entitlement" to the benefit of continued employment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Harkness v. City of Burley*, 110 Idaho 353, 356 (1986) ("employee must have more than a mere hope of continued employment").

Here, the parties agree that Rydalch was subject to termination only "for-cause" and thus, that Rydalch had a reasonable expectation of—and a constitutionally protected property interest in—continued employment as a juvenile probation officer.

## 2.    State Actors—Bonneville County and Meri Bybee as Defendants

MEMORANDUM DECISION AND ORDER - 8

Having decided that Rydalch had a property interest in continued employment, the Court must next determine if Bonneville County and Meri Bybee are "persons" acting under the color of state law.

Preliminarily, Defendants argue that Bybee should be dismissed as a defendant because (1) claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded; and (2) there is no basis for any allegation against Bybee in her individual capacity because she acted at all relevant times within the course and scope of her employment. *Id*.

Rydalch's Amended Complaint does not specify whether she is suing Bybee in her individual or official capacity. Further complicating the inquiry is that "individual" capacity can refer to two separate doctrines. First, a state official may be named in a complaint in her "individual" capacity "as a fictional surrogate for the State, such that the Eleventh Amendment does not apply even though recovery ultimately comes from the State's coffers." *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009). Second, *personal* liability may be imposed on a state official, "such that the money comes from the official's own resources." *Id*. The Ninth Circuit has recognized that due process and equal protection claims can be brought against government officials in their personal capacities. *See OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012). Under this theory, a plaintiff must show only that "the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In such instances, personal liability does not turn on whether the official acted within the scope of

**MEMORANDUM DECISION AND ORDER - 9**

her authority; rather, the only relevant inquiry is whether the action was taken under color of state law. *Id*. at 28.

When, as here, a Section 1983 complaint is ambiguous as to the capacity in which an official is being sued, a presumption arises that the official is being sued in her personal capacity. *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (The Ninth Circuit has "presumed that officials necessarily are sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued.")

Thus, Bybee—in her personal capacity—is a proper defendant. While Bonneville County alleges that there is no basis for any allegation against Bybee in her individual capacity, whether Bybee acted within the course and scope of her employment is not the proper inquiry, as explained above. Rydalch has alleged that Bybee, while acting under color of state law, caused the deprivation of a federal right.[1] Therefore, Bybee is a proper defendant in her personal capacity.[2]

---

[1] In her Amended Complaint, Rydalch alleges that the "acts of the Defendants . . . and each of them, individually and under color of the statutes" "resulted in the deprivation of Plaintiff's property and liberty interest in her employment without due process of law in violation of her constitutional rights, privileges and immunities as guaranteed by the Constitution of the United States and more particularly, the 5th and 14th Amendments to the Constitution of the United States." *Am. Compl.*, pp. 2, ¶ 4; 6–7, ¶ 29.

[2] Insofar as Bybee was named in her official capacity, she is a redundant defendant. Case law is clear that because suits against government officials in their official capacities are really suits against the governmental employer, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

**MEMORANDUM DECISION AND ORDER - 10**

The Court also concludes that Bybee was a person acting under color of state law. A public employee acts under the color of state law when acting in her official capacity. *West v. Atkins*, 487 U.S. 42, 50 (1988). Bybee was the official who proposed that Rydalch be terminated. *Bybee Dep.*, at 19:5–6, Dkt. 24-4. Bybee also testified that she was in attendance at the meeting in which the decision to terminate Rydalch was made. *Id*. at 20:6–10. Finally, according the Bybee, the purpose of the Friday, February 15, 2013 meeting was to advise Rydalch that the decision to terminate her had been made and "ask her if she had anything else to add." *Id*. at 22:14–24. Because Bybee was acting in her capacity as the juvenile court services director at the time Rydalch was terminated, Bybee was a person acting under color of state law.[3]

As to Bonneville County, municipalities are included among those "persons" to whom § 1983 applies. *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978). A municipality can be liable when a constitutional deprivation was directly caused by a municipal policy, statement, ordinance, regulation, decision, or custom officially adopted and promulgated by that body's officers. *See id*. at 690–91. Alternatively, a plaintiff may show that the "decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to

---

[3] The doctrine of qualified immunity protects state actors from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). It establishes immunity from suit rather than a defense to liability. *Id*. Here, however, neither party made a qualified immunity argument in their briefing. Thus, whether Bybee is entitled to qualified immunity is an outstanding issue and one that is not properly before the Court for the purposes of deciding this motion.

represent official policy in the area of decision" or that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Id.* (internal citations omitted).

Here, it is unclear who, if anyone, was the final decision-maker.[4] According to Bybee, the decision to terminate Rydalch was made at a meeting Bybee attended with Bonneville County Director of Human Resources Dan Byron, County Attorney Scott Hall, and County Commissioner Roger Christensen. The Court finds that Rydalch has raised a genuine issue of material fact that the official or officials with final policymaking authority ratified the decision to terminate Rydalch.

Having determined that Rydalch has sufficiently stated a § 1983 claim, the Court will next analyze whether Rydalch has established a genuine issue of material fact as to each of her two causes of action: (1) that Defendants violated her right to due process when they terminated her; and (2) that Defendants engaged in gender-based discrimination when they did not terminate a male supervisor who received a DUI while on the job.

A.   *Due Process Claim*

The Due Process Clause of the Fourteenth Amendment applies to public employees who have a property right in continued employment. *Cleveland Bd. of Educ.*

---

[4] Bybee testified that she proposed Rydalch's termination to Human Resources Director Dan Byron, but that she did not know whether Byron was the official with final decision-making authority. *Bybee Dep.* 123:3–123:18, Dkt. 24-4.

*v. Loudermill*, 470 U.S. 532, 538 (1985). At the very least, due process requires notice of the contemplated action, the basis and evidence relied upon in deciding to take the contemplated action, and an opportunity to respond. *Id.*, at 546. The notice requirement is satisfied with an oral or written notification of the allegations against the employee, coupled with an explanation of the evidence that supports those allegations. *Id*. An opportunity to respond is sufficient when the employee is able to present, in person or in writing, reasons why a "*proposed* action should not be taken . . . ." *Id*. (emphasis added). Thus, the opportunity to respond must take place before the decision to take the contemplated action is made.

In order to determine whether Rydalch's due process claim survives summary judgment, the Court must carefully examine the timeline of relevant events, paying particular attention to what Defendants told Rydalch and when the statements were made. After Rydalch informed her supervisors about her DUI on Monday, February 11, 2014, Bybee told Rydalch to go home and that an investigation would be conducted. Rydalch had no additional contact with anyone at Bonneville County until Friday, February 15, 2014. On that day, Bybee read the Discipline Report to Rydalch, thereby notifying Rydalch of the allegations against her and providing an explanation of at least some of the evidence that supported those allegations. Most problematic, though, is the requirement that Rydalch have an opportunity to respond. Rydalch was simply not given a meaningful opportunity to respond to the allegations against her. By Bybee's own

testimony, the purpose of the Friday meeting was to tell Rydalch that she had been terminated.[5] Since the Friday meeting was also the time in which Bybee notified Rydalch of the allegations against her, Rydalch had no opportunity to meaningfully respond before the decision to terminate her was made. Further supporting this conclusion is that while "concerns expressed by Judge Savage, treatment providers, and other collateral contacts" about Rydalch's job performance were stated as facts supporting the decision to terminate her, Rydalch was not made aware of those concerns until the Friday meeting. *Id*. at ¶ 22.

Relatedly, Defendants blatantly ignored their own county policy, which required that Rydalch be provided a pre-termination hearing where she could have responded to the allegations made against her. Bybee testified that she was not aware of the Progressive Discipline Policy that required she provide Rydalch with written notice of the date, time, and place where a pre-termination hearing was to be held, along with a

---

[5] Bybee's testimony is inconsistent in that she first indicated the following:

> On 2-15 when I met with Kenda with Kyla and Brian, I asked her if she had anything she wanted to clarify. I asked her to read – I explained to her the reason for dismissal. I asked her if she would like to review it or if she had any additional information she would like to give me *before the decision was made*. I asked her if there was anything – more information. Asked her if she wanted to add. She refused to read the document and she refused to sign it.

*Bybee Dep*., 88:9–23, Dkt. 24-4 (emphasis added). Bybee later testified that the decision to "terminate based on the information we had at the time" was made prior to the Friday meeting, when Bybee met with with Bonneville County Director of Human Resources Dan Byron, County Attorney Scott Hall, and County Commissioner Roger Christensen . *Bybee Dep.*, 126:20–24, Dkt. 24-4.

summary of the allegations lodged against Rydalch. *Bybee Dep.* 98:22–99:8, Dkt. 24-4. It is undisputed that Bybee never consulted the Employee Handbook to determine the proper procedures for terminating Rydalch, and never informed Rydalch of her right to a hearing. *Id.*, at 25:15–25:25.

In sum, because Rydalch was given no meaningful opportunity to respond to the allegations against her—before the decision to terminate her was made—Rydalch's due process claim survives summary judgment. The Defendants' motion for summary judgment as to the due process claim is denied.

### B. *Equal Protection Claim*

In her Amended Complaint, Rydalch alleges that Bonneville County treated her "disparately from her male counterpart because of her gender." *Am. Compl.* at 6, Dkt. 16. She explains that in 2007, a male juvenile probation supervisor was on a work-related trip when he was stopped by a police officer and detained for driving under the influence of alcohol. *Pl. Statement of Facts*, at 7, Dkt. 24-1. Unlike with Rydalch, Bonneville County did not suspend this male employee while it investigated, and ultimately placed him on probation as opposed to terminating his employment. *Id.* at 8.

Bonneville County argues that summary judgment should be granted in its favor as to this claim because Rydalch has failed to assert that the alleged disparate treatment was based on her membership in a protected class. *Def.'s Br.* at 6, 8; Dkt. 20-1. Rydalch responds that "there is a colorable claim that the supervisor was treated differently because he was a well-liked male employee (as opposed to the Defendants' characterization of the Plaintiff's claim that it was anti-woman, the factfinder could

conclude that the employer was "pro-male"), or in the alternative more likely as a supervisor to be given special treatment." *Pl.'s Resp.*, at 17–18, Dkt. 24. Bonneville County replies that Rydalch's response is insufficient to survive summary judgment. While Rydalch has not presented much evidence, she has presented *sufficient* evidence to survive the summary judgment stage, as discussed below.

The equal protection component of the Fifth Amendment's Due Process clause confers a "federal constitutional right to be free from gender discrimination" at the hands of government actors. *Davis v. Passman*, 442 U.S. 228, 234–35 (1979). A plaintiff alleging a violation of equal protection in a § 1983 claim must ultimately prove that the defendant acted in an intentionally discriminatory manner. *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). But in order to simply survive summary judgment, a plaintiff must only produce evidence sufficient to establish a genuine issue of fact as to the defendant's motivations. *Id*.

Rydalch may base her case either on direct evidence of discriminatory intent or on a presumption of discriminatory intent arising from the elements set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010).[6] Those elements are: (1) membership in a

---

[6] Courts in the Ninth Circuit are not required to apply the formal Title VII *McDonnell Douglas* burden-shifting framework in Section 1983 claims; however, because both require a showing of intentional discrimination, summary judgment decisions as to § 1983 claims often mirror Title VII analyses. *Anthoine*, 605 F.3d at 753; *see also Keyser*, 265 F.3d at 754. The Court agrees with the parties that it is appropriate to apply the *McDonnell Douglas* framework here.

**MEMORANDUM DECISION AND ORDER - 16**

protected class; (2) qualifications for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) similarly situated employees not in the protected class received more favorable treatment. *Id*. Under the *McDonnell Douglas* framework, "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citations omitted). The defendant may then rebut that presumption by producing an explanation that the adverse action was taken "for a legitimate, nondiscriminatory reason." *Id*. at 507. At the third step, "the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Nicholson v. Hyannis Air Service, Inc*., 580 F.3d 1116, 1126–27 (9th Cir. 2009) (internal quotation marks omitted). Very little evidence is required to raise a genuine issue of fact regarding a defendant's motive that will require resolution by a fact finder. *Id*. at 1127.

Here, Rydalch has established a *prima facie* discrimination claim. As a woman, she is part of a protected class, and she clearly experienced an adverse employment decision. In construing the evidence in the light most favorable to Rydalch, the Court finds that the remaining two elements are also satisfied. First, a reasonable jury could conclude that Rydalch performed her job in a satisfactory manner. Defendants argue that Rydalch's work was not satisfactory.  In support of that contention, they note that complaints from both parents of juvenile offenders, as well as a magistrate judge, were lodged against Rydalch. These complaints, however, were only communicated to

Rydalch after the decision to terminate her had been made, so Rydalch had no

opportunity to correct those performance deficiencies. More importantly, in Rydalch's

last performance review on August 24, 2012, her supervisor rated her overall work

performance as a three out of five, indicating that Rydalch "meets work performance

standards." The supervisor's notes indicated:

> Kenda is our most senior officer. She is a valued member of the Juvenile
> Probation team, and can be relied upon to assist newer officers when
> needed. Some concerns have been noted at this time, however they have
> been brought to her attention and we believe that they will be corrected by
> her next evaluation. At this time a merit step increase would not be
> recommended if possible. However, Kenda has time to show improvement
> and progress.

*Def.'s Statement of Facts*, at 4, Dkt. 20-2. Based on this record, a jury could determine

that Rydalch satisfactorily performed her job.

As to the fourth and final element, Rydalch has put forth enough evidence for a

jury to conclude that similarly situated employees not in her protected class received

more favorable treatment. Rydalch alleges that in 2007, a male juvenile probation

supervisor was on a work-related work trip when he was detained for driving under the

influence. *Pl.'s Statement of Facts*, at ¶¶ 58–67, Dkt 24-1. The supervisor refused to take

the requested breathalyzer test, but was ultimately released after the officer spoke to

Defendant Bybee. *Id*. The supervisor was not suspended during the county's internal

investigation, and no final disciplinary action was taken until his case was adjudicated.

*Id*. Rather than being terminated like Rydalch, the supervisor was placed on probation.

*Id*. Defendants attempt to explain the discrepancies in discipline by pointing to what they

allege are crucial factual differences. For example, Defendants claim that unlike Rydalch,

**MEMORANDUM DECISION AND ORDER - 18**

the male supervisor had not received two DUI's in his lifetime, was not a substandard employee, and was not dishonest in his report of the DUI. *Def.'s Statement of Facts*, at 11, Dkt. 20-1. The Court is not persuaded.  In construing the evidence in the light most favorable to Rydalch, a jury may find that her DUI from fourteen years earlier was simply too old to reasonably be considered in Defendants' decision-making. And again, Rydalch's last performance evaluation notes "some concerns" with her performance, but hardly establishes that she was "a substandard employee." Finally, Rydalch may have been less than truthful when recounting the number of alcoholic beverages that she had consumed, but she did immediately report her DUI to her supervisors. In sum, a reasonable jury could conclude that Rydalch has satisfied her *prima facie* case, thereby creating a presumption that Defendants unlawfully discriminated against her.

Moving to the second step under *McDonnell Douglas*, Defendants have articulated a legitimate, nondiscriminatory reason for its actions. Defendants cite Rydalch's most-recently acquired DUI, that she was untruthful in stating that she had only consumed two beers, and her allegedly poor work performance. These allegations are supported by substantial evidence, which includes the testimony of Bybee, Rydalch's performance evaluation, and the Discipline Form itself. Defendants have thus met their burden of production.

As to the third step under *McDonnell Douglas*, courts have repeatedly held that "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124

**MEMORANDUM DECISION AND ORDER - 19**

(9th Cir. 2004). Most crucially here, "[a] plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011). Admittedly, Rydalch has not produced much evidence as to this claim, but what she has produced is sufficient to meet her minimal burden at the summary judgment stage. There is no doubt that Defendants substantially deviated from their established policies and practices, to Rydalch's disadvantage. It is undisputed that the Progressive Discipline Policy and the Grievance Procedure Policy outlined in the Employee Handbook were completely ignored throughout Rydalch's termination process. *Pl.'s Ex. C*, ¶¶ 27–30, Dkt. 24-6. Under *Earl*, this failure is sufficient to raise a triable issue of pretext. That Defendants cited never-before-disclosed performance-based complaints in the Discipline Form as justification for the termination also weighs in favor of a finding that a triable issue of pretext exists.

Because Rydalch introduced the minimal evidence necessary to raise a genuine issue of material fact as to whether her termination was gender-motivated, summary judgment as to this claim is denied.[7]

## ORDER

**THEREFORE, IT IS HEREBY ORDERED:**

---

[7] In light of the Court's holding, Rydalch's request within her Response Brief for additional time pursuant to F.R.C.P. 56(d)(2) to obtain affidavits, declarations, and discovery is moot.

**MEMORANDUM DECISION AND ORDER - 20**

1.      Defendants' Motion for Summary Judgment (Dkt. 20) is **DENIED**.



DATED: August 3, 2015

B. Lynn Winmill
Chief Judge
United States District Court